IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

CITY OF HURRICANE, WEST VIRGINIA and
THE COUNTY COMMISSION OF PUTNAM
COUNTY, WEST VIRGINIA,

      Plaintiffs,

v.            CIVIL ACTION NO.   3:14-15850

DISPOSAL SERVICE INCORPORATED,
a West Virginia Corporation and
WASTE MANAGEMENT OF WEST VIRGINIA,
INCORPORATED, a Delaware Corporation,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

  Pending is Defendants' Motion to Dismiss [for Improper Notice under the Resource Conservation and Recovery Act], ECF No. 6. For the reasons explained below, the Court **DENIES** this Motion.

**I. Background**

  After providing notice on April 25, 2014, to the Administrator of the U.S. Environmental Protection Agency ("EPA"), the State of West Virginia, and Defendants Disposal Service, Inc. ("DSI"), and Waste Management of West Virginia, Inc. ("Waste Management"), Plaintiffs City of Hurricane, West Virginia, and The County Commission of Putnam County, West Virginia, filed the instant case in this Court on May 5, 2014. *See* Compl. ¶ 7, ECF No. 1; Ex. A, Compl., ECF No. 1 at 34-46. Plaintiffs allege that Defendants improperly and unlawfully disposed of hazardous wastes and solid wastes in Hurricane, West Virginia,—which is located within Putnam County,

West Virginia—at a landfill which is owned and operated by DSI and also operated by Waste Management. Compl. ¶¶ 1-2. The specific wastes alleged to have been improperly disposed of by Defendants are three commercial chemicals: "Crude MCHM"—a chemical mixture containing methanol—, propylene glycol phenyl ether ("PPH"), and dipropylene glycol phenyl ether ("DiPPH"). *Id.* ¶¶ 13-14, 29.

Under Count I, Plaintiffs bring a citizen suit against Defendants pursuant to § 7002(a)(1)(B) of the federal Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901 et seq., for, among other allegations, contributing to the present disposal of solid and hazardous waste which may present an imminent and substantial endangerment to health or the environment. 42 U.S.C. § 6972(a)(1)(B); Compl. ¶¶ 75-86. Count II alleges that Defendants are responsible for a nuisance affecting public health as used in West Virginia Code § 16-3-6, and Count III alleges that Defendants are responsible for a public nuisance under Article 1135 of the Hurricane, West Virginia, Code of Ordinances. Compl. ¶¶ 90-05, 98-103. Plaintiffs request various types of declaratory relief, injunctive relief, restitution, and costs. *Id.* at 31-32.

Plaintiffs allege that this Court has federal question jurisdiction, pursuant to 28 U.S.C. § 1331, over the RCRA claim and that, thus, the Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over the remaining two claims, though these two remaining claims do not arise under federal law. Compl. ¶¶ 4-5.

In the instant Motion to Dismiss, Defendants argue that Plaintiffs' RCRA claim must be dismissed—either for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) or for failure to state a claim upon which relief can be granted under Rule 12(b)(6)—due to Plaintiffs' failure to abide by the statutory notice requirements explicitly required by RCRA § 7002, under which Plaintiffs bring their sole federal count. In particular, Defendants argue that

Plaintiffs failed to give the ninety days of notice required under the statute before commencing this suit and that Plaintiffs cannot prove that they are entitled to the sole exception to this notice requirement. As a result, Defendants argue, Count I must be dismissed, and this Court should refuse to exercise supplemental jurisdiction over Counts II and III.

In their Response, ECF No. 11, Plaintiffs do not contest that they failed to follow the ninety-day statutory notice requirement; however, they contend that their RCRA claim does qualify for the exception to this requirement. Defendants filed a Reply, ECF No. 12, and, shortly thereafter, filed a motion, ECF No. 13, requesting that this Court consider a letter from the EPA regarding MCHM, ECF No. 13-1. In its June 30, 2014, Order granting that motion, this Court requested further briefing from both sides regarding the impact of the letter on the Motion to Dismiss. ECF No. 14. Pursuant to this request, Defendants filed a Supplemental Reply, ECF No. 15, and Plaintiffs filed a Supplemental Response, ECF No. 16. The instant Motion to Dismiss is now ripe for resolution.

## II. Regulatory Framework

Plaintiffs bring the RCRA portion of this case under 42 U.S.C. § 6972(a)(1)(B), which states,

> *Except as provided in subsection (b) . . . of this section*, any person may commence a civil action on his own behalf . . . against any person, including the United States and any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution, and including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment . . . .

*Id.* (emphasis added). Subsection (b) of § 6972 states, inter alia,

> No action may be commenced under subsection (a)(1)(B) of this section prior to *ninety days* after the plaintiff has given notice of the endangerment to--

> (i) the Administrator;
> (ii) the State in which the alleged endangerment may occur;
> (iii) any person alleged to have contributed or to be contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste referred to in subsection (a)(1)(B) of this section,
>
> *except* that such action may be brought *immediately* after such notification in the case of an action under this section *respecting a violation of subchapter III of this chapter*.

*Id.* § 6972(b)(2)(A) (emphasis added).

Subchapter III of the RCRA deals with the management of hazardous waste. *See id.* §§ 6921-6939g. Subchapter I defines "hazardous waste" for the overall chapter—apparently including Subchapter III—as:

> a solid waste, or combination of solid wastes, which because of its quantity, concentration, or physical, chemical, or infectious characteristics may--
> (A) cause, or significantly contribute to an increase in mortality or an increase in serious irreversible, or incapacitating reversible, illness; or
> (B) pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, or disposed of, or otherwise managed.

*Id.* § 6903(5). However, § 6921, part of Subchapter III, dictates that the Administrator of the EPA is responsible for "promulgat[ing] regulations identifying the characteristics of hazardous waste, and listing particular hazardous wastes (within the meaning of section 6903(5) of this title), *which shall be subject to the provisions of this subchapter*." *Id.* § 6921(b)(1) (emphasis added); *see also Edison Elec. Inst. v. U.S. E.P.A.*, 2 F.3d 438, 441 (D.C. Cir. 1993) ("[The] RCRA itself does not include a list of hazardous wastes nor a specific method for determining whether a waste is hazardous. Instead, the statute defines 'hazardous waste' generally . . . . [Through § 6921(b)(1),] Congress directed the [EPA] to identify hazardous wastes . . . .").

Pursuant to § 6926, also part of Subchapter III, the Administrator of the EPA may authorize a state to administer and enforce its own hazardous waste program "in lieu of" the federal Subchapter III program, as long as the state program is "equivalent to" and "consistent with" the

federal program and provides adequate enforcement of compliance with the requirements of Subchapter III. 42 U.S.C. § 6926(b). West Virginia received such authorization from the EPA in 1986, and the state has implemented its own hazardous waste program through the Hazardous Waste Management Act ("HWMA"), W. Va. Code §§ 22-18-1 to -25. West Virginia Final Authorization of State Hazardous Waste Management Program, 51 Fed. Reg. 17739-01 (May 15, 1986); W. Va. Code § 22-18-2(b)(4) ("[T]he purpose[] of this article [is] . . . [t]o assume regulatory primacy through Subtitle C of the [RCRA]," which is codified as Subchapter III.). The HWMA defines "hazardous waste" to mean "a waste or combination of wastes, which because of its quantity, concentration or physical, chemical or infectious characteristics, may: (A) [c]ause, or significantly contribute to, an increase in mortality or an increase in serious irreversible, or incapacitating reversible, illness; or (B) pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, disposed of or otherwise managed." W. Va. Code § 22-18-3.

Pursuant to the HWMA, the West Virginia Department of Environmental Protection ("WVDEP") administers the state's hazardous waste program. *See id.* § 22-18-4.[1] Under the HWMA, the Director of the WVDEP is responsible for the promulgation of rules "establishing criteria for identifying the characteristics of hazardous waste, identifying the characteristics of hazardous waste and listing particular hazardous wastes *which are subject to the [HWMA]*." *Id.* § 22-18-6(a)(2) (emphasis added). However, such rules "shall be consistent with but no more expansive in coverage nor more stringent in effect than the rules and regulations promulgated by the [EPA] pursuant to the [RCRA]." *Id.* § 22-18-6(a). Through a legislative rule, the WVDEP has adopted, for the purposes of the state's hazardous waste program, the EPA's regulations regarding

---

[1] *See also* Agency History, W. Va. Dep't of Envtl. Prot., http://www.dep.wv.gov/Pages/OrganizationalHistoryandOverview.aspx (last visited July 29, 2014) ("In . . . 2001 . . . the Division of Environmental Protection became the Department of Environmental Protection.").

the identification and listing of hazardous wastes under the federal Subchapter III program, with exceptions which the parties agree do not apply to this case. W. Va. Code R. § 33-20-3 ("The provisions of 40 C.F.R. part 261 are hereby adopted and incorporated by reference with the modifications, exceptions and additions set forth in this section.").

Part 261 of Title 40 of the Code of Federal Regulations contains the rules that the EPA has promulgated regarding the identification and listing of hazardous wastes under Subchapter III of the RCRA. *See* 40 C.F.R. § 261.1(a), (b). This part defines "hazardous waste" to be a solid waste which, among other options, 1) "exhibits any of the characteristics of hazardous waste identified in subpart C of this part," 2) "is listed in subpart D of this part," or 3) is "a mixture of solid waste and one or more hazardous wastes listed in subpart D of this part," and which is not otherwise excluded. *Id.* § 261.3(a). Subpart C lists four characteristics of hazardous waste: ignitability, corrosivity, reactivity, and toxicity. *See id.* § 261.20 to .24. Toxicity, in particular, is demonstrated through a very specific testing protocol, the "Toxicity Characteristic Leaching Procedure, test Method 1311." *Id.* § 261.24. Subpart D specifically lists methanol as a hazardous waste, with very specific and detailed exclusions. *See id.* §§ 261.31(a), 261.33(f).

### III. Analysis

Plaintiffs allege that the specific chemical wastes disposed of by Defendants at the landfill in Hurricane—Crude MCHM, PPH, and DiPPH—resulted in widespread ailments, including skin and eye irritation, nausea, diarrhea, and vomiting, when approximately 10,000 gallons of these chemicals accidentally leaked into the water source for hundreds of thousands of West Virginians in January 2014. They argue that these chemicals are, therefore, "toxic" under Subchapter III. Indeed, it is alleged that the resulting waste from the cleanup after this leakage—at least nine truckloads of it—is precisely the waste that is at issue in this case. Plaintiffs additionally allege that

the West Virginia Test Assessment Project, launched by the West Virginia Bureau for Public Health in February 2014 to evaluate the spilled chemicals, reported that very limited toxicological data had been reported for Crude MCHM—or even for pure MCHM—and that the EPA, despite having developed a national system providing toxicology information to the public, lists no toxicology information for any of these spilled chemicals. Plaintiffs further argue that Crude MCHM, in particular, contains methanol—a listed hazardous waste under Subchapter III of the RCRA—and is thus itself a "hazardous waste" under Subchapter III.

Defendants argue that Plaintiffs have failed to *prove* that any of the three chemical wastes involved in this suit qualifies as a hazardous waste under Subchapter III of the RCRA. They point out that Plaintiffs have failed to prove—by using the testing protocol outlined in 40 C.F.R. § 261.24—the toxicity, as specifically defined under RCRA Subchapter III, of any of these chemical wastes. They point out that none of the three chemical wastes at issue are themselves listed by the EPA under subpart D. They also argue, through citations to various EPA publications and rules, that the chemical waste in this case does not properly qualify as "a mixture of solid waste and one or more hazardous wastes listed in subpart D of this part" as defined under 40 C.F.R. § 261.3(a)—despite the fact that Crude MCHM contains methanol. The flaw in Defendants' argument is that they insist that Plaintiffs must wholly *prove* the facts at issue at this early stage in the proceedings.

Though neither the U.S. Supreme Court nor the Fourth Circuit has directly ruled upon whether the statutory notice provisions in the RCRA are jurisdictional,[2] the Fourth Circuit has implied that it considers such provisions to be jurisdictional:

---

[2] *See Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 629 F.3d 387, 400 (4th Cir. 2011) ("Because we conclude that Gaston's defense was timely raised, we need not determine whether the mandatory notice requirement of § 1365(b)(1)(A) is jurisdictional in the strict sense of the term." (internal quotation marks omitted)).

> We believe that the district court should have dismissed Beazer's RCRA claim without prejudice. *If a court does not have subject matter jurisdiction over a claim, it can only dismiss without prejudice; it cannot reach the merits.* We acknowledge that the [U.S. Supreme] Court in *Hallstrom* did not determine whether the [RCRA] notice provision was "jurisdictional in the strict sense of the term." [*Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 31 (1989).] However, *the Court did give strong indications that the provision was to have the same effect as a jurisdictional bar.* First, the Court stated that "the notice and 60-day delay requirements are mandatory conditions precedent to commencing a suit under the RCRA citizen suit provision." *Id.* Second, the Court quoted a concurrence by Justice Brennan which stated that "the requirement of exhaustion of state remedies was certainly a mandatory precondition to suit, and in that sense a 'jurisdictional prerequisite.'" *Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 137 (1981) (Brennan, J., concurring in judgment), *quoted in Hallstrom*, 493 U.S. at 31. Finally, *Hallstrom* indicated that dismissal for failure to satisfy the notice provisions should not prejudice the plaintiffs' ability to file suit after they had complied with the provisions.

*But see Beazer E., Inc. v. U.S. Navy*, 111 F.3d 129, at *5 (4th Cir. 1997) (unpublished decision) (emphasis added) (footnote omitted) (citation omitted). This Court will thus treat the instant statutory notice issue as a jurisdictional issue.

The question of what burden is upon Plaintiffs at this early jurisdictional stage is analogous to that which is upon a plaintiff who files a citizen suit under the Clean Water Act or the Surface Mining Control and Reclamation Act, each of which requires that the plaintiff make a "good faith allegation" of continuous or intermittent violation for jurisdictional purposes. *See* 30 U.S.C. § 1270(a)(1); 33 U.S.C. § 1365(a)(1); *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 57 (1987). As this Court explained in *Ohio Valley Environmental Coalition v. Elk Run Coal Company, Inc.*, "[t]he issue of what evidence must be shown for jurisdictional purposes is distinct from what evidence must be shown for a defendant to ultimately be held liable." No. CIV.A. 3:12-0785, 2014 WL 2526569, at *3 (S.D. W. Va. June 4, 2014). Analogizing to the manner in which the jurisdictional amount requirement in diversity cases is tested for sufficiency, this Court found that the proper test of whether a plaintiff has sufficiently made a good

faith allegation for jurisdictional purposes is "'whether it appears to be a *legal certainty* that the jurisdictional fact is *not* satisfied.'" *See id.* at *4 (emphasis added) (quoting *Chesapeake Bay Found. v. Gwaltney of Smithfield, Ltd.*, 611 F. Supp. 1542, 1549 n.8 (E.D. Va. 1985), *aff'd*, 791 F.2d 304 (4th Cir. 1986), *vacated on different grounds*, 484 U.S. 49). Applying such a low standard makes sense when assessing jurisdictional allegations. The complaint is filed before any discovery takes place in a case, and it would be putting the cart before the horse to require Plaintiffs to definitively prove their jurisdictional allegations at the outset of the case. This Court will not—and may not—require that they do so.

Importantly, "when the jurisdictional facts and the facts central to a . . . claim are inextricably intertwined, *the trial court should ordinarily assume jurisdiction* . . . . [In such a situation,] a trial court should dismiss under Rule 12(b)(1) only when the jurisdictional allegations are clearly immaterial, made solely for the purpose of obtaining jurisdiction or where such a claim is *wholly unsubstantial and frivolous* . . . ." *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009) (emphasis added) (citation omitted) (internal quotation marks omitted) (ellipsis omitted). The jurisdictional allegation at issue here is that this citizen suit respects a violation of Subchapter III of the RCRA and thus is exempt from the ninety day time lapse after notice requirement which would otherwise attach to such an RCRA claim. More specifically, Plaintiffs allege that the waste chemicals involved in this action are toxic or otherwise hazardous waste under Subchapter III of the RCRA. This allegation is central to Plaintiffs' case and is thus not "clearly immaterial" or made solely for the purpose of obtaining jurisdiction. Given Plaintiffs' allegations of evidence showing the toxicity of the chemical waste and their allegation that the EPA may not have readily available toxicological data on these chemicals—along with the fact that a Subchapter III listed chemical comprises at least some of the chemical waste—this Court cannot say that Plaintiffs'

jurisdictional allegation that the waste chemicals involved in this action are toxic or otherwise hazardous waste under RCRA Subchapter III is wholly unsubstantial and frivolous.

Additionally, the Second Circuit, Seventh Circuit, and Ninth Circuit, have all—mostly without determining whether the statutory notice provisions in the RCRA are jurisdictional[3]—ruled similarly upon an issue closely related to that presented in this case. These rulings appear to place only a minimal burden upon the plaintiff—that his claim not be frivolous—when determining whether he has sufficiently alleged that the action he brings "respects" a violation of RCRA Subchapter III for notice purposes. First, looking to the underlying purposes of the RCRA notice provisions and the catch-22 faced by a plaintiff alleging claims involving both non-hazardous and imminently dangerous hazardous waste, the Second Circuit, in *Dague v. City of Burlington*, ruled that a complaint which contains both an RCRA Subchapter III claim and a closely-related non-RCRA Subchapter III claim—termed a "hybrid complaint"—is entirely exempt from any notice provisions which would otherwise apply to the non-RCRA Subchapter III claim. 935 F.2d 1343, 1351-52 (2d Cir. 1991), *rev'd in part on other grounds*, 505 U.S. 557 (1992). Recognizing the opportunity for abuse, the *Dague* court elaborated, "[I]f a plaintiff should allege *frivolous* subchapter III claims, he would not only be subject to rule 11 sanctions, but his claims could also be dismissed early in the litigation process, and the court, by stay or dismissal, could require full observance of the delay period." *Id.* at 1352 (emphasis added); *see also Simsbury-Avon Pres. Soc'y, LLC. v. Metacon Gun Club, Inc.*, No. CIV. 3:04CV803JBA, 2005 WL 1413183, at *6 (D. Conn. June 14, 2005) ("To properly circumvent the notice otherwise required by [the RCRA], a plaintiff's subchapter III claims must not be 'frivolous' and must be 'closely related' to the non-subchapter III claims." (citation omitted)), *aff'd on other grounds sub*

---

[3] The Ninth Circuit has explicitly held that the statutory notice provisions in the RCRA are jurisdictional. *See, e.g.*, *Covington v. Jefferson Cnty.*, 358 F.3d 626, 636 (9th Cir. 2004) ("Both [RCRA] notice provisions are jurisdictional: Absent compliance with a required notice provision, we lack subject matter jurisdiction to hear the RCRA claims.").

*nom. Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199 (2d Cir. 2009); *cf. Aiello v. Town of Brookhaven*, 136 F. Supp. 2d 81, 110 (E.D.N.Y. 2001) ("Congress's intent in balancing the dangers of delay to health and the environment against encouraging nonjudicial and nonadversarial resolution of environmental conflicts is best manifested by permitting the immediate initiation of (a)(1)(B) imminent hazard suits whenever subchapter III hazardous chemicals *can fairly be alleged* to be a component of the endangerment." (emphasis added)).

The Seventh and Ninth Circuits have both followed suit. *Covington v. Jefferson Cnty.*, 358 F.3d 626, 637 (9th Cir. 2004); *AM Int'l, Inc. v. Datacard Corp.*, 106 F.3d 1342, 1350-51 (7th Cir. 1997). Additionally, the Seventh Circuit, in *AM International, Inc. v. Datacard Corp.*, specified that "whether a party has complied with [the] RCRA's notice and delay provisions is determined at the time the complaint is filed" and thus, even if a non-frivolous Subsection III claim ultimately fails on its merits, this ultimate failure does not negate the exemption from the RCRA's delay after notice provision which the non-frivolous claim earned at the time the complaint was filed. *See* 106 F.3d at 1351; *see also Dague*, 935 F.2d at 1353 ("[C]ount I does not cease to be sufficient to keep the 'hybrid' complaint in court simply because count I ultimately proved to be unsuccessful. *Hallstrom*[, 493 U.S. 20,] makes clear that the notice determination is to be made at the outset . . . .").

These "hybrid complaint" cases thus add additional support to this Court's determination that Plaintiffs have adequately alleged a Subchapter III RCRA claim. *See also Simsbury-Avon Pres. Soc'y*, 2005 WL 1413183, at *6 ("In the absence of controlling authority, plaintiff's subchapter III claim will be deemed non-frivolous."); *Aiello*, 136 F. Supp. 2d at 110 ("[T]he presence of a subchapter III chemical in the leachate plume should . . . be considered as non-frivolous for the purpose of obviating the need to comply with the delay period in regard to

plaintiffs' (a)(1)(B) claim."). Though Defendants attach to their Motion two different letters, one from the EPA and one from the WVDEP, *see* ECF Nos. 6-1 and 13-1, stating that the chemical waste at issue is not a "hazardous waste" under the RCRA, these letters do not alter this Court's conclusion that Plaintiffs' Subchapter III RCRA claim was non-frivolous at the time the Complaint was filed. First, the EPA letter was not written until after the Complaint was filed. *See* ECF No. 13-1. Second, Plaintiffs properly point out that, without having conducted any discovery in this case, they cannot know precisely what information was provided by Defendants to the WVDEP before it concluded that, "[b]ased upon [the information submitted by Defendant DSI], the WVDEP believes that this waste is not a hazardous waste under the [RCRA]." ECF No. 6-1 at 2, 4. Plaintiffs' nascent Subchapter III claim may ultimately fail; however, this is not the proper context in which to make such an assessment.

Given this Court's determination that Plaintiffs have adequately alleged that this case respects a violation of RCRA Subchapter III, Plaintiffs' RCRA claim is exempt from the ninety day time lapse after notice requirement which would otherwise attach, under 42 U.S.C. § 6972(b)(2)(A), to Plaintiffs' RCRA citizen suit.

### IV. Conclusion

For the reasons explained above, Defendants' Motion to Dismiss [for Improper Notice under the RCRA], ECF No. 6, is **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: August 6, 2014

ROBERT C. CHAMBERS, CHIEF JUDGE